UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.                                                                 Case No. 8:06-CR-400-T-27EAJ

MARLON MEJIA
_____/

STATEMENT OF REASONS AND FACTS JUSTIFYING
SENTENCE OUTSIDE THE ADVISORY GUIDELINES

During the sentencing hearing, after considering the advisory guideline range and the enumerated sentencing factors set forth in 18 U.S.C. § 3553(a), this Court announced its reasons for the sentence imposed and its findings justifying a sentence outside the advisory guideline system. This Statement of Reasons is intended to memorialize the Court's announced reasons, which are incorporated herein by reference. Mejia testified at his sentencing hearing. The Government called no witnesses to rebut Mejia's testimony.

This case arises from a money laundering investigation initiated by the Government, using a confidential informant, Ivan Abreu. Abreu was a close friend of Defendant Mejia's, whom Mejia described as a "big brother" in his life. Unknown to Mejia, Abreu had been arrested on federal money laundering charges and had agreed to work as an informant for the government. Notwithstanding their close relationship, Abreu and Mejia had not been in touch with each other for a substantial period of time. Mejia attempted to call his friend from time to time but his calls were not returned or their conversations were uncharacteristically brief.

At the behest of an undercover government agent, Abreu, sounding frantic, began calling Mejia, unsuccessfully attempting to involve him in money laundering discussions. After repeated calls, Mejia finally met with Abreu. Abreu told his friend that Abreu and his family were in "grave danger of getting killed." Abreu begged Mejia to help him. Mejia asked Abreu what he could do. Abreu literally got down on his knees and begged Mejia to help him find someone to "move" money for him. Abreu convinced Mejia to meet with the undercover agent. Mejia even asked how to talk so that he sounded like someone knowledgeable in money laundering.

At their first meeting in April 2004, the undercover agent posed as a Columbian drug organization representative who dealt in the "white stuff." Reflecting Mejia's lack of criminal sophistication, he actually began taking notes during the first meeting and was promptly admonished by the agent. After several meetings with the agent, Mejia indicated a willingness to become involved. According to Mejia, he only agreed to become involved to help his friend Abreu out and never expected to gain financially from the activities being discussed. It is undisputed that although the agent and Mejia discussed a fee to be paid to the person who ultimately laundered the money, Mejia never expected a fee himself. (PSR, ¶ 18). After discussing the need to move large amounts of cash, the agent implied that if any of the money came up missing, a "department down south" would physically take care of the people who did not take care of the money.

During a subsequent meeting, Mejia falsely claimed to have a relative in the Dominican Republic involved in narcotics investigations and a close contact in the Banco Popular. (PSR, ¶ 19). At sentencing, the Government conceded that Mejia's claims were false and he had no such contacts. In May, 2004, Mejia introduced the undercover agent to Saad Saad and they discussed laundering of drug proceeds. (PSR, ¶ 20). Thereafter, the agent dealt solely with Saad. Mejia was not involved

again with the agent. Saad went on to launder money for the agent, utilizing two other individuals to launder alleged drug proceeds provided by the agent. (PSR, ¶¶ 23-26; 28-35). Saad essentially cut Mejia out of the discussions and later activities, refusing to pay anything to Mejia. Mejia's next involvement with the case was when he was arrested on November 1, 2006. (PSR, ¶ 36).

Most significantly, other than introducing the agent to Saad, Mejia was not involved in any other activities of the conspiracy to which he pleaded guilty. The Government accordingly recommended that he receive a mitigating role reduction under § 3B1.2 of the Guidelines. This Court agreed and awarded Mejia a three level reduction for mitigating role. Mejia, a former minor league professional baseball player, has no criminal arrests. His conduct in this offense was undisputedly naive. Moreover, even the Government acknowledges that his actions demonstrated, consistent with his lack of criminal history, a lack of criminal sophistication. Importantly, he was essentially talked into getting involved in the conspiracy by a close friend who got down on his knees and begged Mejia to help him, falsely claiming to be in "grave" danger of being killed along with his family.

Upon being arrested, Mejia promptly, without an attorney, admitted his involvement and immediately began cooperating, demonstrating extraordinary acceptance of responsibility. Moreover, the Government filed a Motion for Downward Departure pursuant to § 5K1.1 of the Guidelines as a result of Mejia's cooperation. (Dkt. 127). This Court, impressed with Mejia's cooperation and willingness to testify and expose himself and his family to the risks attendant to being identified as a cooperating government witness, departed five levels downward to a Level 17, resulting in a Guideline range of 24 to 30 months based on a Criminal History I.

Given all of the circumstances discussed, this Court determined that the advisory guideline range, even after the departures for substantial assistance, was greater than necessary to satisfy the statutory purposes of sentencing. In arriving at that finding, this Court considered Mejia's background and characteristics, including Mejia's marginal participation in the conspiracy. As noted, he has no prior arrests. Although the offense on its face is serious, as earlier discussed, Mejia's participation demonstrated a lack of criminal sophistication on his part, unlike the co-defendants. His character witnesses confirm that he is highly thought of as a role model, sibling and father. His involvement in the instant offense is unquestionably out of character. The length and conditions of his probation sentence, including six months of home detention, community service and the requirement that he attend ten cocaine sentencings in the federal courthouse and report his observations to the undersigned should promote respect for the law.

Whether this sentence will deter others is questionable, although as a practical matter, it has been this judge's experience that those predisposed to commit federal drug and laundering offenses are not paying much attention to sentences imposed and would not likely be deterred by any sentence imposed. Moreover, in the event one who is predisposed to engage in money laundering looked at this case and the sentences imposed, it would be apparent to that individual that even making an introduction on behalf of a loved one will get you arrested and indicted. That should be a deterrent in and of itself.

Although the guidelines are advisory by virtue of *United States v. Booker*, the Court is mindful that one of the laudable purposes served by passage of the guidelines was to avoid *unwarranted* sentencing disparity. Accordingly, this Court agrees that in all but the most unusual cases, the appropriate sentence will be within the advisory guideline range. This case presents just

that, an unusual case with offender characteristics rarely found in these cases. Only after careful and deliberate consideration of the advisory guideline range and the other considerations in 18 U.S.C. § 3553(a) did this Court arrive at a sentence which it believes to be reasonable and just punishment for this particular Defendant. It will not, because of the unique facts, promote sentencing disparity. Five years of federal probation is "just punishment" for a 37 year old man with no prior criminal arrests. Five years of federal probation adequately reflects the seriousness of his role in this offense. The public is protected as this Defendant will be under constant scrutiny for five years.

In sum, all of these considerations lead this Court to conclude, notwithstanding the nature of the offense, that a 60 month probation sentence adequately reflects the seriousness of the offense, provides appropriate and just punishment to this Defendant, and adequately protects the public. This sentence has been imposed after due consideration of the enumerated sentencing factors set forth in 18 U.S.C. § 3553(a), including the advisory guideline range, and the unique circumstance attendant to this Defendant's criminal conduct.

JAMES D. WHITTEMORE
U.S. DISTRICT JUDGE
Dated: 6/15/07